| | |
|---|---|
| 1 | Jerry H. Stein (State Bar No. 27721) |
| | Leonard Flanagan (State Bar No. 20966) |
| 2 | LEVIN & STEIN |
| | 201 Queen Anne Ave. N., Suite 400 |
| 3 | Seattle, WA 98109 |
| | Telephone: (206) 388-0660 |
| 4 | Facsimile: (206) 286-2660 |

Honorable Samuel J. Steiner
Chapter 11 Proceeding

Attorneys for Plaintiff Kirkland Place Owners Association

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, SEATTLE

In re:

LAWRENCE KATES,

                Debtor.

KIRKLAND PLACE CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,

                Plaintiff,

   v.

LAWRENCE KATES,

                Defendant.

No: CV 09-10188 SJS

ADVERSARY NO:

COMPLAINT FOR:

(1) Relief from Fraudulent Transfers; and
(2) Declaratory Relief

Plaintiff KIRKLAND PLACE CONDOMINIUM ASSOCIATION ("the Association") hereby asserts the following claims for relief:

**I.    PARTIES**

1.1    The Association is a nonprofit corporation established pursuant to the Washington Condominium Act (the "WCA") to serve as the association for the Kirkland Place Condominium ("the Project.") Pursuant to a Declaration of Condominium recorded on February 1, 2005, the Declarant Kirkland Place Limited Partnership ("KPLP") converted the property comprising the

**COMPLAINT**- 1

Project, which had formerly commonly been known as "The Creekside Apartments" into a condominium. Pursuant to the Declaration, and/or its amendments, and pursuant to RCW 64.34.304, the Association has the duty to maintain, repair, replace and restore all of the common elements, limited common elements, Association property, and all exterior walls and siding located in and on the Project.

1.2 Pursuant to RCW 64.34.304(1)(d), the Association has the right to institute litigation "in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." The Association is instituting this action pursuant to that statute, on behalf of itself and all of the unit owners on matters affecting the Project.

1.3 Defendant LAWRENCE KATES ("Kates") is the Debtor in this Chapter 11 Proceeding.

## II. COMMON FACTUAL ALLEGATIONS

2.1 In 2005, KPLP converted the Kirkland Place Condominiums, a 100 unit "garden style" apartment complex built in the 1980s, into condominiums. Because construction at the Project is riddled with serious defects, in November of 2007 the Association filed an action in King County Superior Court entitled: "KIRKLAND PLACE CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation v. KIRKLAND PLACE LIMITED PARTNERSHIP, a Nevada Limited Partnership; KIRKLAND FINANCIAL CORP.; KIRKLAND SPRINGS, LLC, a Nevada limited liability company; CENTER BAY CORPORATION, a Nevada corporation; CENTER BAY MANAGEMENT CORPORATION, a Nevada corporation; SHERMAN L. STACY, individually, and JANE DOE STACY, individually, and the marital community composed thereof; LORI GUAY, individually, and JOHN DOE GUAY, individually, and the marital community composed thereof; DAVID WILLIAMS, individually, and JANE DOE WILLIAMS, individually,

**COMPLAINT**- 2

and the marital community composed thereof; DOE GENERAL PARTNERS 1-10; DOE LIMITED PARTNERS 1-10; DOE DECLARANT AFFILIATES 1-20; and DOE DECLARANT AGENTS 1-5 (the "Superior Court Action").

2.2     In the Superior Court Action the Association sought recovery against KPLP and the other named defendants on theories of breach of the implied warranties of quality and suitability under the Washington Condominium Act ("WCA"); alter ego; failure to provide or properly amend the Project's public offering statement; material misrepresentations or omissions in the Project's public offering statement; fraudulent concealment of defects at the Project; negligent inspection and repairs of the Project; negligent management of the Project; violation of Washington's Consumer Protection Act; breach of fiduciary duties; and fraudulent or unlawful distributions or transfers of KPLP's assets. In the course of preparing its case for trial, the Association documented in excess of $9.5 million in damages, including in excess of $5,000,000 in repair costs and $1,783,000 in loss of value and use.

2.3     After extensive investigation by both sides experts, and four separate mediations with mediator Chris Soelling, in a process that began in April of 2009 and concluded with a signed Settlement Agreement in June of 2009, the Association settled with Defendants KPLP, Kirkland Financial Corp. ("KFC"), Kirkland Springs, LLC, Center Bay Management Corp. ("CMBC"), Center Bay Corporation ("CBC"), Sherman L. Stacey ("Stacey") and Jane Doe Stacey (individually and the marital community composed thereof), Lori Guay and John Doe Guay (individually and the marital community composed thereof), and David Williams and Jane Doe Williams (individually and the marital community composed thereof) (collectively "the Settling Defendants") and three of the Settling Defendants' insurers, Truck Insurance Exchange, Farmers Insurance Exchange (collectively "Farmers") and First Specialty Insurance Corporation (First Specialty"). A true and

**COMPLAINT**- 3

correct copy of the Settlement Agreement is attached hereto as Exhibit "1" and incorporated herein by reference as though set forth herein in full.

    2.4    The Settlement Agreement provides in relevant part for:

        2.4.1    Entry of a $4,800,000 stipulated judgment ("the Judgment") against KPLP, KFC, CBMC and CBC[1];

        2.4.2    A dismissal with prejudice all of the Association's claims against Kirkland Springs, LLC, Stacey, Lori Guay, David Williams and their respective spouses and marital communities.

        2.4.3    Payment of $1,300,000 by Farmers and First Specialty in partial satisfaction of the Judgment against KPLP, KFC, CBMC and CBC;

        2.4.4    An assignment of any and all rights and claims against the settling defendants' insurers; and

        2.4.5    A covenant that the Association will not enforce the Judgment against CBMC, KPLP's or KFC's assets, unless and to the extent such assets are or have been fraudulently transferred or received so as to impair the Association's claims and judgment against KFC, KPLP, or Kates.

    2.5    Pursuant to the terms of the Settlement Agreement, the Judgment was entered against KPLP, KFC, CBMC and CBC for $4,800,000. A true and correct copy of the Judgment is attached hereto as Exhibit "2" and incorporated herein by reference as though set forth herein in full. There is currently $3,500,000 still owing under the Judgment.

    2.6    The relationship between Kates and the defendants against whom judgment was entered in the Superior Court Action is as follows:

---

[1]     Costs and attorney fees were included in the principal amount of the Judgment.

**COMPLAINT**- 4

2.6.1 KPLP is a Nevada limited partnership, comprised of Kates and KFC. KPLP was the named Declarant of the Project, and operated the Project as apartments for many years prior to conversion of the apartments to condominiums in 2005.

2.6.2. CBMC is a Nevada corporation which is, directly or indirectly, wholly-owned by Kates. CBMC acted as the property manager for the Project while it was operated as apartments. CBMC also acted as the property manager for the Project after the conversion of the apartments to condominiums while the Association was under control of a Board of Directors appointed by KPLP, and for a time, while the Association was controlled by a Board elected by unit owners. In addition, CBMC acted without compensation as a general contractor in effectuating various repairs and renovations on the Project as part of the conversion and sale of units. In undertaking these responsibilities, CBMC was acting as an agent of KPLP.

2.6.3. KFC is a Nevada corporation which is, directly or indirectly, wholly-owned by Kates. KFC acted as the general partner of KPLP, and as a holding company for assets of KPLP and certain affiliated companies.

2.6.4 According to Interrogatory Answers provided by KPLP in the Superior Court Action the total proceeds generated by sales of units at the Project was $17,107,904. In responding to Interrogatory 20 in the Superior Court Action KPLP stated that: "All proceeds of sales went to KPLP, the sole owner of which was Lawrence Kates." KPLP then answered Interrogatory 23 by stating in relevant part: "All proceeds of unit sales were transferred from KPLP to Lawrence Kates." As a result of the transfers in question, KPLP has no assets.

### III. FIRST CLAIM – AGAINST KATES FOR RELIEF FRON FRAUDULENT TRANSFERS FROM KPLP.

3.1 The Association incorporates herein by reference paragraphs 1.1 through 2.6 inclusive, of this Complaint.

3.2     The Association is informed and believes, and on that basis alleges, that the transfers to Kates from KPLP were fraudulent transfers within the meaning of the Uniform Fraudulent Transfer Act in that:

    3.2.1.   The transfers were made with actual intent to hinder, delay, or defraud KPLP's creditors; or

    3.2.2   The transfers were made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and KPLP:  (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of KPLP were unreasonably small in relation to the business or transaction; or (b) KPLP intended to incur, or believed or reasonably should have believed that KPLP would incur, debts beyond its ability to pay as they became due; or

    3.2.3.   The transfers were made or the obligations were incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and KPLP was insolvent at that time or KPLP became insolvent as a result of the transfer or obligation; or

    3.2.4   The transfer was made to an insider (as defined in the Uniform Fraudulent Transfer Act) for an antecedent debt KPLP was insolvent at that time, and the insider had reasonable cause to believe that KPLP was insolvent.

3.3     As a result of the fraudulent transfers, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to, avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim.

## IV.     SECOND CLAIM – AGAINST KATES FOR RELIEF FRON FRAUDULENT TRANSFERS FROM CBMC.

4.1     The Association incorporates herein by reference paragraphs 1.1 through 2.6 inclusive, of this Complaint.

**COMPLAINT**- 6

4.2     The Association is informed and believes, and on that basis alleges, that CBMC made transfers to Kates that were fraudulent transfers within the meaning of the Uniform Fraudulent Transfer Act in that:

    4.2.1.  The transfers were made with actual intent to hinder, delay, or defraud CBMC's creditors; or

    4.2.2   The transfers were made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and CBMC:  (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of CBMC were unreasonably small in relation to the business or transaction; or (b) CBMC intended to incur, or believed or reasonably should have believed that CBMC would incur, debts beyond its ability to pay as they became due; or

    4.2.3.  The transfers were made or the obligations were incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and CBMC was insolvent at that time or CBMC became insolvent as a result of the transfer or obligation; or

    4.2.4   The transfer was made to an insider (as defined in the Uniform Fraudulent Transfer Act) for an antecedent debt CBMC was insolvent at that time, and the insider had reasonable cause to believe that CBMC was insolvent.

4.3     As a result of the fraudulent transfers, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to, avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim.

## V.     THIRD CLAIM –     AGAINST KATES FOR RELIEF FRON FRAUDULENT TRANSFERS FROM CBC.

5.1     The Association incorporates herein by reference paragraphs 1.1 through 2.6 inclusive, of this Complaint.

**COMPLAINT**- 7

LEVIN & STEIN
201 QUEEN ANNE AVENUE NORTH, SUITE 400
SEATTLE, WA 98109
206.388.0660; FAX 206.286.2668

5.2 The Association is informed and believes, and on that basis alleges, that CBC made transfers to Kates that were fraudulent transfers within the meaning of the Uniform Fraudulent Transfer Act in that:

 5.2.1. The transfers were made with actual intent to hinder, delay, or defraud CBC's creditors; or

 5.2.2 The transfers were made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and CBC: (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of CBC were unreasonably small in relation to the business or transaction; or (b) CBC intended to incur, or believed or reasonably should have believed that CBC would incur, debts beyond its ability to pay as they became due; or

 5.2.3. The transfers were made or the obligations were incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and CBC was insolvent at that time or CBC became insolvent as a result of the transfer or obligation; or

 5.2.4 The transfer was made to an insider (as defined in the Uniform Fraudulent Transfer Act) for an antecedent debt CBC was insolvent at that time, and the insider had reasonable cause to believe that CBC was insolvent.

5.3 As a result of the fraudulent transfers, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to, avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim.

## VI. FOURTH CLAIM – AGAINST KATES FOR RELIEF FROM FRAUDULENT TRANSFERS FROM KFC.

6.1 The Association incorporates herein by reference paragraphs 1.1 through 2.6 inclusive, of this Complaint.

**COMPLAINT**- 8

6.2     The Association is informed and believes, and on that basis alleges, that KFC made transfers to Kates that were fraudulent transfers within the meaning of the Uniform Fraudulent Transfer Act in that:

    6.2.1.  The transfers were made with actual intent to hinder, delay, or defraud KFC's creditors; or

    6.2.2   The transfers were made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and KFC:  (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of KFC were unreasonably small in relation to the business or transaction; or (b) KFC intended to incur, or believed or reasonably should have believed that KFC would incur, debts beyond its ability to pay as they became due; or

    6.2.3.  The transfers were made or the obligations were incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and KFC was insolvent at that time or KFC became insolvent as a result of the transfer or obligation; or

    6.2.4   The transfer was made to an insider (as defined in the Uniform Fraudulent Transfer Act) for an antecedent debt KFC was insolvent at that time, and the insider had reasonable cause to believe that KFC was insolvent.

6.3     As a result of the fraudulent transfers, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to, avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim.

## VII.  FIFTH CLAIM –     AGAINST KATES FOR DELARATORY RELIEF

7.1     The Association incorporates herein by reference paragraphs 1.1 through 6.3 inclusive, of this Complaint.

**COMPLAINT**- 9

7.2     An actual and substantial controversy exists between the Association on the one hand and Kates on the other hand as to their respective legal rights and duties. The Association contends Kates is liable to it for the Judgment entered against KPLP, CBMC, CBC and KFC in the Superior Court Action in that under applicable Washington law Kates is the alter ego of KPLP, CBMC, CBC and/or KFC in that the entities in question were intentionally used to violate or evade the obligations owed under Washington law to the Association and the purchasers of units at the Project; and disregarding the entities in question is necessary to prevent unjustified loss to the Association and the purchasers of units at the Project. Kates contends that he is not liable to the Association and his is not the alter ego of KPLP, CBMC, CBC and/or KFC.

7.3.    Therefore, declaratory relief under 28 U.S.C. § 2201(a) is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, the Association prays for judgment as follows:

1.     For a judgment or order(s) for avoidance of all improper transfers or obligations to the extent necessary to satisfy the Association's claims;

2.     A declaration that Kates is the alter ego of KPLP, CBMC, CBC and/or KFC and, therefore, liable on the Judgment entered in Superior Court.

3.     For such other and further relief as the Court may deem just and equitable.

DATED this 28th day of September, 2009.

LEVIN & STEIN

By:  /s/ Leonard Flanagan
   Jerry H. Stein (State Bar No. 27721)
   Leonard Flanagan (State Bar No. 20966)
   Attorneys for Plaintiff

**COMPLAINT**- 10